IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-03106-RM-KLM

THOMAS HAYWORTH,

   Plaintiff,

v.

1ST FINANCIAL BANK USA,

   Defendant.

_____

**ORDER**
_____

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF No. 66) and Defendant's Motion for Summary Judgment (ECF No. 69). Both motions have been fully briefed. (ECF Nos. 80, 83, 86, 87.) For the reasons below, Defendant's motion is granted, and Plaintiff's is denied as moot.

**I.      LEGAL STANDARD**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

## II.   BACKGROUND

Plaintiff has a twin sister named Tomeka R. Hayworth. In addition to having similar names, Plaintiff and his sister share the same birthday and middle initial, and their social security numbers differ by only a single digit. In 2009, Plaintiff's sister opened a credit card account with Defendant on which she later defaulted. In April 2016, Defendant closed and "charged off" the account, meaning it considered the debt uncollectable. Sometime later, the account began appearing on Plaintiff's Equifax credit report.[1] In November 2018, Plaintiff disputed to Equifax the presence of the account on his credit report, prompting Equifax to send Defendant an automated consumer dispute verification ("ACDV") form. Defendant investigated the dispute but erroneously verified that the account was Plaintiff's, apparently due to the similarity between Plaintiff's and his sister's identifying information. Plaintiff filed this lawsuit in December 2018,

---

[1] Equifax Information Services, LLC was previously a defendant in this case, but Plaintiff has dismissed his claims against it. (*See* ECF Nos. 72, 73.)

alleging both willful and negligent violation of the Fair Credit Reporting Act ("FCRA") by Defendant.  Essentially, Plaintiff alleges that when Defendant returned the ACDV form, it failed to review and investigate adequately the credit data it had and that by verifying the incorrect information Defendant caused him actual damages.  By June 2019, Equifax had removed the account from Plaintiff's credit report.

### III. DISCUSSION

The FCRA requires that when a furnisher of information, such as Defendant, receives notice of a dispute from a credit reporting agency ("CRA"), such as Equifax, the furnisher must (1) investigate the disputed information, (2) review all relevant information provided by the CRA, (3) report the results of the investigation to the CRA, (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate, and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.  *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013).  If a violation is shown to be willful, a consumer may recover punitive and statutory damages without having to show actual damages.  *Id.* at 1179.  If a violation is merely negligent, however, the consumer must show actual damages.  *Id.*

#### A. Willfulness

Defendant concedes that it made mistakes on the ACDV form it returned to Equifax in November 2018.  It argues that this one-time error does not amount to a willful violation of the FCRA.  The Court agrees.

A willful violation of the FCRA occurs when an entity intentionally violates or recklessly disregards its duties under the statute. *Id.* at 1183. "Recklessness is measured by an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quotation omitted).

Plaintiff points to perceived inadequacies in the investigation Defendant conducted to argue that Defendant acted recklessly in responding to the ACDV form. First, based on the deposition testimony of Defendant's employee who reviewed Plaintiff's information and completed the form, Plaintiff contends that "spending 5-15 minutes on each 'investigation' of a consumer dispute and cranking out 20-25 disputes per day in a 2-4 hour span can hardly be described as reasonable." (ECF No. 83 at 6.) Although the Court does not necessarily disagree with the general proposition that spending more time on such investigations could lead to fewer errors, it is a fact of life that people make mistakes. And while numerous mistakes might show that Defendant's procedures and policies were unreasonable, a single mistake does not. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ("An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."). That is especially so here because, given the similarities between Plaintiff's identifying information and his sister's, the mistake by Defendant is understandable.

Second, Plaintiff contends that the investigation was unreasonable because Defendant did not call him. Plaintiff cites no authority for the proposition that a furnisher is required to call consumers directly to comply with its duty to conduct a reasonable investigation when there is a dispute, and it is far from clear that the onerousness of such a requirement would not outweigh

4

the potential benefits. Moreover, such a requirement would be particularly inapt here, where Plaintiff contends Defendant "ha[d] all the information it needed to correct the misreporting in its own records." (ECF No. 83 at 4.) Nor has Plaintiff provided any evidence that Defendant had his phone number or any other means of contacting him directly had it wished to do so. Under the circumstances, the fact that Defendant did not call Plaintiff is insufficient to support a finding that it failed to conduct a reasonable investigation.

Plaintiff also argues that Defendant's practice of not marking disputed accounts as disputed demonstrates a willful violation of the FCRA. But a furnisher has an affirmative duty to report a debt as disputed only when the consumer disputes the debt directly with the furnisher. *See Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1101 (D. Colo. 2012) (citing 15 U.S.C. § 1681s-2(a)(3)). That is not the case here, where Plaintiff disputed the account with Equifax, not Defendant. Further, Plaintiff has not shown that failing to mark the account as disputed was materially misleading in the context of this case. *Cf. Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-cv-1673-PAB-MJW, 2017 WL 4297344, at *5 (D. Colo. Sept. 28, 2017) (unpublished) (concluding that marking an account as previously disputed after previously marking it as disputed, without noting the plaintiff's continuing dispute of the accuracy of the reporting, could create a materially misleading impression and therefore was a question for the jury).

Plaintiff cites authority from other circuits for the proposition that a furnisher may be held liable for failing to report a debt as disputed when responding to an ACDV form. *See, e.g.*, *Gorman*, 584 F.3d at 1163; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008). But even if this circuit were to adopt this position, the cases Plaintiff cites are

distinguishable because they involved consumers communicating directly with furnishers about an underlying dispute.  Plaintiff also cites *Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-cv-1673-PAB-MJW, 2017 WL 4297344, at *5 (D. Colo. Sept. 28, 2017), in support of his contention that Defendant acted willfully.  But that case also involved a consumer communicating directly with the furnisher.  And in that case the court found that marking an account as previously disputed after previously marking it as disputed, without noting the plaintiff's continuing dispute of the accuracy of the reporting, could create a materially misleading impression and therefore was a question for the jury.  None of these cases holds that a furnisher has a duty to report to the CRA issuing an ACDV form that the underlying account is disputed.

Further, in contemplating the scope of a furnisher's duty when it receives an ACDV form, the *Gorman* court noted that amount of information contained in the notice is a relevant consideration as to whether the furnisher has conducted a reasonable investigation.  584 F.3d at 1158.  Here, Defendant received some information from Equifax—that Plaintiff disputed the account was his—but Plaintiff was hardly forthcoming about why he believed a mistake had been made.  Indeed, Defendant points out that Plaintiff had the option of seeking review of his account based on his assertion that it was actually his sister's, but instead he chose the more general option of asserting merely that the account was not his.  Plaintiff was represented by counsel when he submitted the dispute to Equifax, making it less likely that this nondisclosure was inadvertent.  Thus, this is not an instance where the furnisher had specific information about the basis for the dispute.  If relevant, specific information had been provided, it is unlikely that the underlying error would have occurred.

Accordingly, Plaintiff has not adduced sufficient evidence to support a finding that Defendant willfully violated the FCRA.

**B.     Negligence**

Defendant next argues that Plaintiff has failed to show that it caused him any actual damages from November 2018 through June 2019—that is, from when it returned the ACDV form to Equifax to when Equifax removed the account from Plaintiff's credit report. Again, the Court agrees with Defendant.

Plaintiff does not allege that Defendant's conduct caused him any loss of credit opportunities; rather, he contends that his actual damages include his "frustration and stress at being denied his right to have an accurate credit report." (ECF No. 83 at 10.) He cites only two pieces of evidence to support this contention: his own affidavit and the deposition testimony of his mother. (*See* ECF No. 83 at 11-12.) The relevant paragraphs of his affidavit state as follows:

> 13.     The mixed results of my dispute caused me to become frustrated with the process of keeping my good name separate from my sisters. I felt as if [Defendant] had called me a liar and said that my dispute, which was entirely accurate in their account did not belong to me at all, was meritless.
>
> 14.     I experienced a general feeling of hopelessness in that my dispute had not been taken seriously by [Defendant], which should have been in the best position to avoid saddling me with someone else's credit history.
>
> 15.     I value my good credit and although I have not always been successful, I should only get penalized for accounts that belong to me. If I missed a bill, then I accept responsibility for it, but it was very disappointing to have someone else's accounts on my report. I understand the value of having good credit and recognize that having good credit is, in many ways, the safety net that individuals of my age need when unexpected life events rear their head. For example I do not always, and may not in the future, have the ability to make unexpected payments for automobile maintenance or medical bills and consequently I must rely on credit to pay for these unexpected and necessary expenditures.

7

    16. Having someone else's negative credit history on my credit report has caused me great worry, concern, and anxiety because it could effect my ability to provide for myself and family.

(ECF No. 66-2 at ¶¶ 13-16.) In the relevant deposition testimony, Plaintiff's mother stated that "[h]e is kind of private" (ECF No. 70-7 at 4, p. 11, l. 25); that he is "a private person" (*id.* at 5, p. 14, l. 4); that at some point Plaintiff "was trying to get certain things and maybe he was denied getting it because of the mixup in their credit files, he was frustrated and stressed out and just angry" (*id.* at ll. 10-13); that "he was angry about it because he didn't know how to get it straightened out" (*id.* at ll. 15-17); and that he seemed "like frustrated and just—just kind of like—I don't know if frustrated and stressed is all the same, but he was really frustrated about it because he felt bad—I don't know if he was embarrassed that he would get denied for something that was not—I'm not for sure. I can't—I just know he was frustrated" (*id.* at 6, p. 20, ll. 16-22).

  The Court finds this evidence is inadequate for a reasonable factfinder to conclude that Defendant caused Plaintiff actual damages. Plaintiff cites *Llewellyn*, 711 F.3d at 1182, for the proposition that an FCRA plaintiff may rely on his own testimony to establish emotional distress damages. But Plaintiff's testimony comes nowhere close to the testimony in that case. There, the plaintiff testified that before his negative credit reports, his preexisting Crohn's disease and depression were under control and he no longer needed medication for his depression. *Id.* at 1181. He testified that afterwards, his health began to rapidly deteriorate, the symptoms of his Crohn's disease returned with great force, he began to experience severe abdominal paid with stomach and intestinal cramping, along with bloating constipation, diarrhea, and reoccurring nausea as well as drenching night sweats, panic attacks, anxiety, severe kidney pains, and horrible joint pains, and his increased health problems caused his depression to return. *Id.*

at 1182.  The *Llewellyn* court determined that such testimony, without corroborating evidence of damages, was sufficient to withstand summary judgment.  *Id.* at 1183.  The Court recognizes that humiliation, injury to reputation, or mental distress may constitute actual damages in an FCRA case, but Plaintiff's and his mother's statements are simply inadequate to create a genuine dispute as to whether Defendant's actions caused him to suffer emotional damages during the seven months his sister's account erroneously appeared on his credit report.

**IV.    CONCLUSION**

Therefore, the Court GRANTS Defendant's motion for summary judgment (ECF No. 69) and DENIES AS MOOT the other pending motions in this case (ECF Nos. 66, 95, 98, 100, 108).  The Clerk shall ENTER JUDGMENT in Defendant's favor and CLOSE this case.

DATED this 14th day of September, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge